IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARÍA TAYDE QUEZADA AGUIÑA, and
RAMÓN SOCORRO URBINA MORQUECHO,

    Plaintiffs,

v.                                                                                  Case No.   23-cv-647

U.S. CITIZENSHIP & IMMIGRATION SERVICES;
DEPARTMENT OF HOMELAND SECURITY;
ALEJANDRO MAYORKAS,
Secretary of Homeland Security;
UR M. JADDOU, Director of USCIS; and
CONNIE NOLAN, Director of USCIS Vermont Service Center,

    Defendants.

**PETITION FOR WRIT OF MANDAMUS
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs María Tayde Quezada Aguiña ("Plaintiff-Petitioner"), and Ramón Socorro Urbina Morquecho ("Plaintiff-Beneficiary") (collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby file this Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief. Plaintiffs challenge Defendants U.S. Citizenship & Immigration Services' ("USCIS"), Department of Homeland Security's ("DHS"), Secretary Alejandro Mayorkas', Director Ur M. Jaddou's, and Director Connie Nolan's unlawful delay in adjudicating Plaintiffs' U Visa applications as a result of their minor child's sexual assault and cooperation with law enforcement.

**INTRODUCTION**

This is an action for a writ of mandamus, declaratory and injunctive relief to adjudicate Plaintiffs' Forms I-918, I-765, and I-192 that would allow Plaintiffs to obtain legal status and employment authorization in the United States. Plaintiffs are both citizens of Mexico. They have

1

three children who are United States citizens. In 2017, Plaintiffs discovered that one of their children was sexually assaulted by her uncle who has since then been deported to Mexico. Upon discovering this horrific situation, Plaintiffs reported the incident to law enforcement and began to cooperate with them. In 2019, Plaintiffs submitted their applications to obtain U Visas as indirect victims and derivatives of a victim of sexual assault. Plaintiffs' applications were received by Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan and they were required to decide Plaintiffs applications as part of the adjudication process. More than four years have passed since submitting their applications and no action has been taken by Defendants.

Plaintiffs bring this action to compel Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan to adjudicate Plaintiffs' applications, and to approve them for their U Visas and employment authorizations which would allow Plaintiffs to obtain legal status in the United States. Plaintiffs' applications remain within the jurisdiction of Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan, who have improperly withheld action on the application for an unreasonable period to the detriment of Plaintiffs.

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (mandamus).

2. This Court has the authority to grant relief under the Mandamus and Venue Act, 28 U.S.C. § 1361, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C.§§ 2201-02. The United States has waived sovereign immunity under 5 U.S.C. § 702.

## VENUE

3.  Venue in this jurisdiction is proper under 28 U.S.C. § 1391(e)(1)(C) because Plaintiffs reside in this District and no real property is involved in this action.

## PARTIES

4.  Plaintiff-Petitioner María Tayde Quezada Aguina is a native and citizen of Mexico. Plaintiff-Petitioner was born in Chihuahua, Mexico on October 19, 1979. She is 43 years old. Plaintiff-Petitioner became eligible to apply for a U Visa and employment authorization because her U.S. daughter, a minor at the time, was victim of sexual assault and she assisted law enforcement to investigate and prosecute the assailant. Plaintiff-Petitioner submitted her application in 2019.

5.  Plaintiff-Beneficiary Ramón Socorro Urbina Morquecho is a native and citizen of Mexico. Plaintiff-Petitioner was born in Chihuahua, Mexico on April 18, 1972. He is 51 years old. Plaintiff-Petitioner became eligible to apply for a U Visa and employment authorization because his spouse, Plaintiff Petitioner, is an "indirect victim" of the sexual assault their daughter endured. Plaintiff-Beneficiary submitted his application in 2019.

6.  Defendant DHS is an executive agency of the United States. Since March 1, 2003, DHS has been the agency responsible for implementing the Immigration and Nationality Act ("INA"), including, but not limited to, provisions relating to issuing legal permanent residence.

7.  Defendant USCIS is a component of DHS, 6 U.S.C. § 271, and an agency within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudicating immigration benefits including adjustment of status applications to become a legal permanent resident. USCIS did not adjudicate Plaintiffs' application within a reasonable time. Plaintiffs' applications remain pending with USCIS.

8. Defendant Alejandro Mayorkas is the Secretary of Homeland Security and is the head of the DHS and has ultimate responsibility for the administration and enforcement of the immigration laws. He is sued in his official capacity.

9. Defendant Ur M. Jaddou is the Director of USCIS. As Director, she is responsible for overseeing, and has ultimate responsibility for, the timely adjudication of immigration benefits and establishing and implementing governing policies. She is sued in her official capacity.

10. Defendant Connie Nolan is the Director of the USCIS Vermont Service Center in Saint Albans, Vermont. She exercises authority over USCIS activities relating to U Visa application adjudications and any derivative applications such as employment authorization forms. She is sued in her official capacity.

## LEGAL FRAMEWORK

### The U Visa Program, INA § 101(a)(15)(U)

11. On October 28, 2000, Congress created the U Visa program. See Victims of Trafficking and Violence Prevention Act of 2000 (VTVPA), Pub. L. No. 106-386, Title V, § 1513, 114 Stat. 1464, 1533 (2000).

12. Concerned that "[i]mmigrant women and children are often targeted to be victims of crimes committed against them in the United States" and that "[a]ll women and children who are victims of these crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes[,]" Congress acted to establish the U Visa program in order to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute" certain serious crimes "while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." *See* VTVPA § 1513(a), 114 Stat. 1533.

13. The U Visa program creates a mechanism for noncitizen victims of serious crime to safely engage law enforcement and, likewise, for law enforcement to engage immigrant communities to deter, prevent, and prosecute criminal activity for the betterment of United States.

14. The U Visa was created to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protections to victims of such crimes without the immediate risk of being removed from the country. By providing victims of crime with an avenue for regularization of their immigrant status, the U Visa encourages victims to work and cooperate with law enforcement agencies. Congress also aimed to strengthen relations between law enforcement and immigrant communities by increasing cooperation and removing some of the fear of deportation held by many undocumented migrants. *See, e.g.*, *U and T Visa Law Enforcement Resource Guide*, DEPARTMENT OF HOMELAND SECURITY (January 4, 2016) https://www.dhs.gov/sites/default/files/publications/U-and-T-Visa-Law-Enforcement-Resource%20Guide_1.4.16.pdf.

15. A noncitizen is eligible for status under the U Visa program if (1) she suffered substantial physical or mental abuse as a result of having been a victim of one of the enumerated crimes; (2) she possesses or possessed information concerning the criminal activity; (3) she has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting the criminal activity; and (4) the criminal activity violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States. *See* INA § 101(a)(15)(U).

16.     In many cases where a child is the victim of a crime, the child may not be able to provide law enforcement with adequate assistance.  This may be due to the child's age or trauma suffered, among various other reasons.  Parents of a child victim play a crucial role in detecting and reporting crimes, providing information and assisting law enforcement in the investigation or prosecution of the crime committed against the child.  Recognizing this, an alien parent can apply to be recognized as an "indirect victim" if the principal victim is a child under 21 years of age and is incompetent or incapacitated to provide assistance to law enforcement in the investigation or prosecution of the crime committed against the child or if the child is deceased due to murder or manslaughter.  The immigration status of the child victim is not relevant to this determination; Form I-918B can be submitted for an a lien parent whether or not the child is a U.S. citizen or a non-citizen. *See* U Visa Law Enforcement Certification Resource Guide, Department of Homeland Security, p. 13, available at:

https://www.dhs.gov/xlibrary/assets/dhs_u_visa_certification_guide.pdf.

17.     A statutory cap limits the grant of U Visas to 10,000 per fiscal year. INA § 214(p)(2)(A). *See* INA § 214(p)(2)(A); 8 C.F.R. § 214.14(d)(1). The statutory cap only applies to principal applicants and does not apply to derivative applicants. *See* INA § 214(p)(2)(B).

18.     However, USCIS may not approve Form I–918 for a beneficiary unless it has approved the petitioner's Form I–918.

19.     A wait list was created by regulation to provide deferred action to an eligible petitioner whenever the statutory cap is reached within a given fiscal year. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53027 (Sept. 29, 1995) (codified at 8 C.F.R. § 214.14(d)(2)). Deferred action provides several important protections to petitioners that include, among others, eligibility for work authorization.

8 CFR § 214.14(d)(2) ("USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.").

20. Last, the bona fide process is distinct from the waiting list process. Before June 2021, a principal petitioner and his or her qualifying family members received employment authorization and deferred action *only* when USCIS placed the principal petitioner on the waiting list. This is not the case anymore.

## The U Visa Administrative Process

21. The administrative processing to accord U nonimmigrant status to eligible petitioners is tightly prescribed and regulated.

22. First, a petitioner must obtain a certification from a law enforcement official that she was the victim of a crime, the crime is a recognized crime under the U Visa program, and that she was, is or likely to be helpful in the investigation, or prosecution of the criminal activity. The USCIS has prescribed that law enforcement officials make this certification on a particular form, USCIS Form I-918 Supplement B, U Nonimmigrant Status Certification. *See* 8 C.F.R. § 214.14(a)(12).

23. Second, on submission, the USCIS makes a completeness check to verify that all required initial evidence is present. The petition must include Form I-918, Petition for U Nonimmigrant Status; Form I-918, Supplement B, U Nonimmigrant Status Certification; Form I-192, Application for Advance Permission to Enter as Nonimmigrant, if there are any inadmissibility issues; a personal statement describing the criminal activity of which the applicant was a victim; and evidence to establish each eligibility requirement.

24. Third, USCIS either adjudicates the petition by according the petitioner and/or beneficiary U-nonimmigrant status or, in most cases, places the petitioner on the wait-list status for an adjudication. *See* 8 C.F.R. § 214.14(d)(2).

25. If the statutory cap has not been reached, the USCIS adjudicates the petition for U nonimmigrant status.

26. If the statutory cap has been reached, the USCIS *must* place the petitioner (not the beneficiary) on the waiting list until an adjudication can be made. 8 C.F.R. § 214.14(d) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement.").

27. Once the individual has been granted deferred action, he or she may apply for and receive employment authorization by submitting a Form I-765. This is part of the bona fide screening process.

## Bona Fide Screening

28. Congress granted USCIS the authority to grant work authorization for petitioners with pending, bona fide applications. INA § 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U)").

29. A bona fide application means an application where there appears to be no instance of fraud in the application, the application is complete, properly filed, contains an LEA endorsement, includes completed fingerprint and background checks, and presents prima facie evidence to show eligibility for U nonimmigrant status. *See, e.g.*, 8 C.F.R. § 214.11(k) (defining "bona fide" for related statutory nonimmigrant program).

30. Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan admittedly state that the processing time for an application or U Visa is 62 months at its Vermont processing center. U.S. Citizenship and Immigration Services, Check Case Processing Times, available at: https://egov.uscis.gov/processing-times/ (last accessed July 27, 2023).

31. Over the span of five years, the processing times has increased. In 2018, the median processing time was 41.8 months and now it is approximately 62 months. *See* U.S. Citizenship and Immigration Services, Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, available at: https://egov.uscis.gov/processing-times/historic-pt (updated on May 31, 2023) (last accessed July 27, 2023).

32. This amount of time, which was arbitrarily decided by Defendants, is unreasonable.

33. If the petitioner and beneficiary properly filed their applications, then Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan must make a determination on the application and if the statutory cap is reached, then they must place the petitioner (not the beneficiary) on a waiting list and provide them with employment authorization.

34. Last, the relevant code at the time that Plaintiffs filed their applications, 8 C.F.R. § 274a.13(d), provided that USCIS "will adjudicate the employment authorization documents application within 90 days from the date of receipt of the application," and additionally that "[f]ailure to complete the adjudication within 90 days *will* result in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d) (emphasis added).[1]

---

[1] A new version of this code, which granted USCIS wide discretion to issue these documents was found to be void *ab initio*. *See Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 19 (D.D.C. 2022).

9

## FACTUAL BACKGROUND

35. Plaintiffs are married and have three children. Their only daughter, and Plaintiff-Petitioner's best friend, was sexually assaulted by Plaintiff-Beneficiary's brother when he lived with the family in the United States.

36. In July 2017, Plaintiffs' daughter finally mustered the courage to tell them of the sexual assault she endured.

37. Soon after finding out, Plaintiff-Petitioner and her daughter began cooperating with law enforcement.

38. Plaintiff-Petitioner after several interviews, law enforcement determined that they could not extradite the assailant from Mexico but that as soon as he steps foot in the United States, they would proceed to arrest and prosecute him.

39. Law enforcement then certified that Plaintiff-Petitioner cooperated in the prosecution of the assailant as required by immigration laws to obtain a U Visa.

40. Plaintiff-Petitioner also attended therapy and counseling sessions at Casa Fortaleza in Albuquerque, New Mexico.

41. Plaintiff-Petitioner's therapist certified that she suffers from PTSD which borders depression as a result of her daughter's sexual assault.

## PROCEDURAL BACKGROUND

42. Plaintiffs submitted their applications on June 6, 2019 for them to obtain U Visas and employment authorization.

43. Plaintiff-Petitioner applied as an indirect victim and Plaintiff-Beneficiary applied as a derivative of Plaintiff-Petitioner.

44. Defendants received these applications and sent out notices to Plaintiffs stating that they have been received.

45. Along with Plaintiffs' Forms I-918, I-765, and I-192, Plaintiffs submitted the following:

   a. Form I-912, Fee Waiver;

   b. Form I-918, Petition for U Nonimmigrant Status for María Tayde Quezada Aguina;

   c. G-28, Notice of Entry of Appearance as Attorney;

   d. Form I-918, Supplement A, Petition for Qualifying Family Member for Ramón Socorro Urbina Morquecho;

   e. G-28, Notice of Entry of Appearance as Attorney;

   f. Form I-918, Supplement B, U Nonimmigrant Status Certification;

   g. Copy of N.M. Statute § 30-9-13;

   h. Declaration of María Tayde Quezada Aguina;

   i. Letter from Dulce Rodriguez, Social Worker from Casa Fortaleza regarding Ms. Quezada's therapy services;

   j. Form I-765, Application for Employment Authorization for María Tayde Quezada Aguina;

   k. G-28, Notice of Entry of Appearance as Attorney;

   l. Form I-765, Application for Employment Authorization for Ramón Socorro Urbina Morquecho.;

   m. G-28, Notice of Entry of Appearance as Attorney;

   n. Copy of Birth Certificate of María Tayde Quezada Aguina & translation;

    o. Copy of Birth Certificate of Ramón Socorro Urbina Morquecho & translation;

    p. Copy of Marriage Certificate of María Tayde Quezada Aguina & Ramón Socorro Urbina Morquecho & translation;

    q. Form I-192, Application for Advance. Permission to Enter as a Nonimmigrant for María Tayde Quezada Aguina;

    r. G-28, Notice of Entry of Appearance as Attorney;

    s. Form I-192, Application for Advance Permission to Enter as a Nonimmigrant for Ramón Socorro Urbina Morquecho;

    t. G-28, Notice of Entry of Appearance as Attorney;

    u. Copy of Birth Certificate of minor daughter, U.S. Citizen daughter of María & Ramón;

    v. Copy of Birth Certificate of R.A.U.Q., U.S. Citizen son of María & Ramón;

    w. Copy of Birth Certificate of A.S.U.Q., U.S. Citizen son of María & Ramón;

    x. Copy of each page of the current Mexican passport of María Tayde Quezada Urbina; and

    y. Copy of each page of the current Mexican passport of Ramón Socorro Urbina Morquecho.

46. Defendants then proceeded to request that Plaintiffs submit biometrics which were completed and submitted on July 24, 2019.

47. Plaintiffs have complied with all statutory and regulatory requirements for Defendants to adjudicate Plaintiffs applications and receive U Visas and employment authorization forms. They are eligible to adjust status as a matter of law, and there is no apparent basis for the

delay other than Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's failure to adjudicate Plaintiffs' applications.

48. Plaintiff-Petitioner's application must be adjudicated, and if she qualifies, she must be given a U Visa if there is no statutory cap, and if there is, to be placed on the waiting list and she must receive her employment authorization per the bona fide screening requirements.

49. Plaintiff-Beneficiary's application must be adjudicated, and if he qualifies, he must be allowed to adjust status as he is not barred by the statutory cap.

50. Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan have failed to adjudicate Plaintiffs' applications for 1,519 days and counting.

## COUNT I
### Mandamus
### 28 U.S.C. § 1361

51. All previous paragraphs are incorporated as though fully set forth herein.

52. Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan are charged with the responsibility of administering and implementing the INA. Defendants U.S. Citizenship & Immigration Services, Department of Homeland Security, Secretary Alejandro Mayorkas, Director Ur M. Jaddou, and Director Nolan bear sole responsibility for providing an adjudication of Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications.

53. Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's failure to discharge their statutory obligations is injuring Plaintiffs by failing to adjudicate Plaintiffs' applications. Defendants U.S. Citizenship & Immigration Services, Department of Homeland Security, Secretary Alejandro Mayorkas, Director Ur M. Jaddou, and Director Nolan must be compelled to perform a duty owed to Plaintiffs. Namely, that Defendants USCIS, DHS,

Secretary Mayorkas, Director Jaddou, and Director Nolan properly adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications.

54. Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan have failed to adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications, even though it presumably, as a matter of law, has been in possession of all information needed to adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications since June 6, 2019. Therefore, Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan have refused to perform duties legally required of it under federal immigration law, and the Mandamus Act grants this court authority to compel USCIS to perform duties legally required of it under federal law. The Mandamus Act, therefore, grants this court legal authority to compel USCIS to adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications.

55. Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's failure to meet their statutory obligations is detrimental to Plaintiffs.

## COUNT II
### Administrative Procedures Act
### Unreasonable Delay in Agency Action
### 5 U.S.C. §§ 701, *et seq.*

56. All previous paragraphs are incorporated as though fully set forth herein.

57. The purpose of the Administrative Procedures Act ("APA") is to prevent abuse of discretion by federal agencies by granting the federal judiciary authority to review the actions of such agencies.

58. One mechanism the APA uses to prevent abuse of discretion is to place time constraints upon agencies so that agencies do not use prolonged delays for the sole purposes of harassment and intimidation, or as a method to disguise a refusal to act. For this reason, the APA

requires administrative agencies to conclude matters presented to them "within a *reasonable* time." 5 U.S.C. § 555 (emphasis added).

59. The APA also empowers federal courts to review federal agencies to "compel agency action unlawfully withheld or *unreasonably* delayed." 5 U.S.C. § 706(1) (emphasis added).

60. The court also may hold unlawful and set aside agency action that, *inter alia*, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551 (13).

61. By failing to adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications within a reasonable time, Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's practices and procedures violate the Administrative Procedures Act and constitute agency action that is arbitrary and capricious, and not in accordance with law. 5 U.S.C. §§ 701, *et seq.*

62. A District Court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). The Court may hold unlawful and set aside agency action that, *inter alia*, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. §796(2)(C); or "without observance of procedure required by law," 5 U.S.C. 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

63. The failure of Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan to adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's applications violates the APA because they have repeatedly failed to respond to Plaintiffs' requests and continue to ignore their administrative and statutory duties, 5 U.S.C. §555(b), 5 U.S.C. §§706(1), 706(2)(A), 706(2)(C), and 706(2)(D).

64. The failure of the Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan to timely adjudicate Plaintiff-Petitioner's and Plaintiff-Beneficiary's Forms I-918, I-765, and I-192 with the full knowledge that statutes and regulations require the adjudication of these Forms within a reasonable time violates the APA.

65. Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's failure to meet their statutory obligations is detrimental to Plaintiffs.

## COUNT III
## Declaratory Judgment Act

66. All previous paragraphs are incorporated as though fully set forth herein.

67. Plaintiffs contend that Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan actions are unconstitutional, violate the INA, and are arbitrary and capricious and seeks a declaration to that effect. 28 U.S.C. § 2201.

68. An actual, present, and justiciable controversy has arisen between Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, Director Nolan and Plaintiffs concerning Plaintiffs' applications for Plaintiffs to adjust their status in this country.

69. Plaintiffs seek declaratory judgment from this Court that Defendants USCIS', DHS', Secretary Mayorkas', Director Jaddou's, and Director Nolan's failure to adjudicate Plaintiffs' applications, namely their Forms I-918, I-765, and I-192, within a reasonable time is unlawful.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court grant the following relief:

70. Declare that Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan delayed adjudication of Plaintiffs' applications is unreasonable;

71. Declare that Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan have a duty to place Plaintiffs on the waiting list for U nonimmigrant status and grant deferred action;

72. Order Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan to comply with 8 C.F.R. § 214.14(d)(2) and place Plaintiffs on the U Visa waitlist;

73. Order Defendants USCIS, DHS, Secretary Mayorkas, Director Jaddou, and Director Nolan to adjudicate and approve Plaintiff-Petitioner's and Plaintiff-Beneficiary's Forms I-918, I-765, and I-192 within 30 days of the entry of an order and final judgment from this Court in favor of Plaintiffs;

74. Award Plaintiffs reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act. *See* 5 U.S.C. § 504; & 28 U.S.C. § 2412; and

75. Award all other relief to Plaintiffs that it deems just, equitable, and proper.

DATED:   August 3, 2023        */s/ Ramón A. Soto*_____

Ramón A. Soto
**THE SOTO LAW OFFICE, LLC**
300 Central Ave. SW
Suite 2500W
Albuquerque, New Mexico 87102
Office: (505) 273-4062
Fax: (505) 494-1092
ramon@sotolawoffice.co

*Attorney for Plaintiffs*